Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is John Kang, appearing on behalf of Petitioner Fanxing Zeng. Your Honors, Petitioner's position in this case is really supported by two separate and distinct grounds. The first ground being due process. Non-citizens in removal proceedings are guaranteed a full and fair hearing under the Fifth Amendment, and this Court has held as such in a handful of cases. In this case, the one undisputed fact is that ineffective assistance of counsel occurred with Petitioner's prior representation. His prior counsel failed to meet the immigration judge's deadline to file an addendum to an asylum application, which resulted in his entire case being thrown out and him and Petitioner being ordered removed. So, and the BIA, in its order, said simply that the ineffective assistance of counsel in this case was plain. So, do you think, just to jump to the key part of the case, do you think that the Petitioner's former counsel was required to self-report himself to the bar in order to comply with the procedural requirements for an ineffective assistance claim? Not in this case, Your Honor, because while the Lozada requirements as this Court has ineffective assistance of counsel is plain and on the face, on the face of the record, this Court has consistently dispensed with the requirements under Lozada. So, in this case, Judge Bress, I don't believe that Petitioner's previous counsel was obligated to strictly adhere to Lozada and self-report to the bar. But is it really plain from the record here that there is ineffective assistance of counsel? If you look at the record, it's not clear. For example, it could have been your client said I don't want to go and get the biometrics done. In that case, you know, the lawyer tried as best as he could and wasn't able to. The only way we know that, in fact, there was ineffective assistance of counsel is actually the briefs. Your Honor, the ineffective assistance of counsel in this case is quite clear from the Master Calendar hearing. Petitioner's previous counsel waived the interpreter even though the petitioner does not speak any English. And it was waived prior to the hearing started through a filing of a record of Master Calendar. And it wasn't waived in court where there's an interpreter and the judge can explain to the non-citizen, you know, do you agree to this waiver? That's the first example of plain ineffective assistance of counsel. And the second point is ineffective assistance of counsel is plain because the attorney failed to file the addendum to the 589. And setting aside the biometrics portion of the case, filing of the 589 is 100 percent within the purview of the attorney. Is it good enough that he acknowledged this in a brief as opposed to an affidavit or a self-report to the bar? Again, I believe this goes back to this court's consistent reasoning that in cases where ineffective assistance of counsel is plain on the face of the record, the Lozada requirements are not to be strictly adhered to and that we should err on the side of caution when due process has been violated. Well, the BIA seemed to say, you know, they had not been adhered to in material part because the petitioner's counsel had not reported himself to a disciplinary authority consistent with matter of Jesus Melgar. So how do you address that? First of all, Melgar was decided two months after the BIA appeal was filed in this case. And second of all, of course, BIA decisions are not binding on this court, certainly. And this court has its own long line of cases that support petitioner's position that when ineffective assistance of counsel is plain, as it is here, as admitted by the BIA, the Lozada requirements do not need to be adhered to. Did you file a motion to reopen? I saw there was some indication that you might, but did you do so? Yes, Your Honor. Unfortunately, it wasn't part of this record. But as soon as petitioner in this case retained my office, we did go ahead and file that motion to reopen with the BIA. And it is now pending. And on that point, assume I'm just speaking for just hypothetically, if we deny this petition on the ground that the Lozada requirements were not met, would you would your clients still have avenue for relief through the motion to reopen and have the agency decide this now that you have on the record that the Lozada requirements have been met? Technically, Judge Lee, yes, we'll have to wait for the result of this motion to reopen. If the BIA denies it again, based on its reasoning from the first motion, we'd have to appeal that before this court once again. However, the consequences of doing so are pretty grave for the petitioner. In this case, petitioner was a affirmative asylum applicant fearing persecution by the Chinese government on religious grounds. He never even got the chance to present his case. Is the motion to reopen opposed in the BIA? Do you know the motion to reopen has not been opposed thus far? But I don't know for sure if DHS would file an opposition. Well, I mean, it seems that if the BIA is going to deny that motion, I don't think you could deny it on the grounds that it just denied the matter that's before us, because now you do have a you have filed a complaint with the bar. And so it seems that the compliance with matter of Lozada now is somewhat different than it was before. That there's still a question of whether you your client needed to further comply with matter of Lozada in the case that's before us. But it does seem that the record before the BIA on round two is going to be different. I do agree with that, Judge Bress, the record will be much more favorable to the petitioner on the second go around. However, I don't believe that's required for this court to make a decision here today. Going back to my original point, there are two separate and distinct grounds that support petitioner's position in this case. We've discussed Lozada, but the other part of this equation is the due process part. And this court has held in Ortiz, in effect of a census of counsel and a deportation proceeding is the denial of due process under the Fifth Amendment. If the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting. But can we get to that if if the BIA was correct in denying this or at least didn't abuse his discretion and denying this under matter of Lozada, do we even get to this? Your Honor, yes, because the due process side of things actually has nothing to do with Lozada whatsoever. None of the cases, none of the case law under the due process arm in this case even mentioned Lozada. So like I was saying, it is a completely independent and distinct ground that supports petitioner's position. And since the ineffective assistance of counsel was undisputed, it was admitted to by the BIA, it was admitted in respondent's brief. The only other thing that petitioner needs to show in order to prevail under due process is that he was prejudiced. Now, in this case, I think the prejudicial effect of his prior counsel's actions are very obvious. His case was thrown out of court and he was ordered removed back to a country where he fears persecution without even having the chance of presenting one line of testimony. So Lozada aside, I think this court can grant this position solely based on the due process ground. And I guess moving on to Lozada, this court has held consistently, for example, in Krijalva that when the facts are plain on the case of the administrative record, the requirements of Lozada are not dispositive. So I argue that this court does not need to consider the Lozada requirement. But isn't one of the rationales for the Lozada requirement is to flag bad attorneys so they get disciplined or maybe even disbarred. If you just rely on sort of having, you know, having the petitioner report his or her attorney to the state bar, we can just rely on the attorney's self-admissions. We probably won't be able to flag them. I don't think there's a rule that, you know, we somehow, an attorney admits something in the brief that we report them to the state bar. Maybe we should, but there isn't anything like that. So it seems like we're undermining the rationale of Lozada if we allow an attorney to self-admit an error and it gets just hidden among, you know, stacks of paper. Your Honor, I would love to address that question. I see my time is up. You can, we'll give you a minute after. You can answer this question and then we'll give you an extra minute for rebuttal. Sure. Thank you, Your Honor. The underlying principles of Lozada is to prevent frivolous claims of ineffective assistance of counsel and to prevent collusion between clients and attorneys and to use it as a strategy to delay cases. However, that's just not the case. With this case, the case hasn't even began yet. Petitioner's counsel failed to file something that the IJ required. There's absolutely no chance of collusion. And further, I think the petitioner's right to due process and the grave consequences in this case far outweigh the intentions of Lozada and the notion that lawyers need to be flagged. Thank you. You'll have a minute for rebuttal. Mr. Schuchard. Thank you, Your Honor. And good morning. My name is Spencer Schuchard for the Attorney General. May it please the court. This case is about accountability, even when things may seem a little sympathetic. The petitioner missed a clearly signposted deadline. He gave no explanation. And because of that, he lost his chance to prosecute his appeal for asylum. Well, actually, actually, actually, counsel, wasn't that the case. Wasn't there an explanation that it was a legal assistant within the lawyer's office who missed a deadline or procedure? I should say that there's no explanation in the record, but we know for the fact, all we know as it pertains to the facts of petitioners missing the deadline is that he missed a deadline. What we have on appeal is counsel's unsworn arguments about what happened, but those aren't evidence. So what we have here and what we had before the agency was just the fact that a person missed a deadline and he suffered a normal consequence for that. It's not a due process violation and it wasn't an abuse of the discretion of the agency to deny his appeal or to deny his motion to remand. Now, let me ask you about the motion to reopen, is the government intending to oppose that? I wouldn't know. That's that would be the province of the Department of Homeland Security. I can say for the most part, they don't oppose motions to reopen before the board just because there are a lot of them wouldn't, whether they did or didn't, I wouldn't read anything into it in terms of what they think is the quality or the likelihood of success of the of the motion. But our position is that the motion to reopen is entirely distinct. It doesn't have anything to do with the record before a petitioner has a separate track to pursue a proper ineffective assistance claim, which is through a motion to reopen based on ineffective assistance. And it appears based on my skimming of what it looked like he filed that he did comply or try to comply with Lozada, which sort of raises the question as to why he's arguing here that he doesn't need to if he went ahead and tried to correct it. I don't think he has security from you that or, you know, that or DHS, that he's going to be successful in that process. So I completely understand why he's not abandoning this this petition. I guess the question for you is, why does your position make sense? Because in this case, the the first two requirements of Lozada are essentially don't really apply when it's the the same lawyer that continues to represent the petitioner. Maybe this lawyer shouldn't have done that, but he then did do that. So we know there was an agreement right between the the lawyer. We know that in the client, we know the second requirement of Lozada is met. And so I know we have a new decision, Jesus Melgar, that says that even in the case of a lawyer who continues to represent the client, they have to self-report to the bar. But that decision was not in place at the time the petitioner's prior counsel was before the BIA. OK, there's a couple of things there. First of all, we don't actually know or you said two of the three prongs don't apply. And I don't agree. The first prong of Lozada of the requirement is an affidavit or something showing that there's some sort of relationship between these two people. We don't actually have that in this case. We have we have the attorney's notice of appearance, but we've never heard from the petitioner. So we don't know to what extent they interacted or to what extent this was the petitioner's fault. Sometimes petitioners, non-citizens meet their deadlines because they haven't given information to the attorney. We don't want the attorney to be able to to shield their clients from consequences for that by claiming in unsworn documents that it was actually their fault. Oops, my fault. And then have it go back with with zero consequence. That's entirely contradictory to the regulations. And I agree with the petitioner here that the purposes of Lozada are to make sure that these accusations of ineffective assistance are legitimate or at least fairly debatable. And the way that we do that, we do that to police misconduct or to prevent collusion. And the way that we do that in all of these cases, these so-called substantial compliance cases, what you see is that there is some extra evidence in the record that helps us to shed context on what transpired between the attorney. You're saying would it be different if there was an affidavit here by the by Mr. Ingram? Yeah, there would be different if there were something in the record. The only thing we legitimately know is that this person missed a deadline, which is a routine occurrence. And it's routine to have applications deemed abandoned for that reason. Why shouldn't we why shouldn't we just rely on the statements in the brief? Why aren't those sufficient in this instance? Because if you put it in an affidavit, you're exposing yourself to malpractice, to a bar complaint, to whatever else will come from that. The same is true when you admit ineffective assistance of counsel in a brief. And a brief is when it's submitted to the BIA or to this court. It's done with the duty of candor and with all the other ethical duties that that apply to materials that are filed with the court. Why is it different than an affidavit? An affidavit, the affidavit requirement is actually coming from the petitioner in these cases. It's not the attorney's requirement to file an affidavit. The affidavit helps to helps us to understand what this relationship was so we can understand where this decision to not file came from. The bar complaint prong is something that place it's to place the attorney at some sort of professional jeopardy, direct jeopardy. As Judge Lee said, I don't think there is any rule that requiring the court to refer someone to their local bar for claiming that they made a mistake. And likewise, the BIA has their Office of General Counsel, but they're not scanning these briefs. I don't know what their internal process is for submitting these things for discipline. But it's not quite the same as a former client saying to the bar, this person has wronged me. That's a much stronger way of policing these kinds of misconduct. Your opposing counsel says, you know, the BIA said the ineffective assistance of counsel was plain. And so when that's the case, we don't rigorously apply matter of lazada. How do you address that? In an effective, plain ineffectiveness cases still require this extra sort of contextualizing evidence. And all of the cases he cited, there is something extra, usually an affidavit, almost always from the petitioner, but sometimes from counsel themselves. Sometimes there's evidence that they have self-reported to the bar. In none of those cases, is it just the word of the attorney in a brief to the board or to the court saying I was ineffective? And there's a good reason for that. You know, the board relied on matter of Melgar because there is a need, a much more acute need, to keep in mind this sort of professional jeopardy evidence in cases where the alternative is just to blow past the deadline, don't explain it right in a brief, oops, I forgot, and then have it kicked back to the board for another chance that renders the deadline pointless. There would be no reason to keep a deadline if that's the only thing you had to do. The chances of actual professional discipline for that are essentially zero. And again, we don't know what the petitioner's role was here. The other two prongs of lazada are not hortatory. They're mandatory. And we haven't heard from the petitioner at all. We don't know what his role is here. Can we, excuse me, can we remand this case back to the BIA to reconsider the ineffective assistance of counsel claim? I mean, it seems a little bit, as a practical matter, it seems a little bit odd. We're debating whether the lazada requirements should be excused or not or have been met based on the record before us. But we know now that this prior counsel has been fired, has been reported to the state bar, and, you know, it looks like maybe lazada requirements have been met. So it seems a little bit odd. We're just kind of perhaps been overtaken by events here. So do we have the, can we and should we remand this back to the BIA to reconsider the IAC claim? No, because the board didn't make any error and it didn't abuse its discretion for more than one reason, just for the fact that the motion to reopen is separate. And that's where the board can actually address a proper ineffective assistance claim instead of just, you know, random argument in a brief. But for the reason that, remember, the petitioner raised two complaints to the board. He had his direct appeal, which he doesn't sound like he's challenging, and his motion to reopen or motion to remand based on ineffective assistance. Motions to remand require a showing that something would likely change on remand. And remember, this petitioner, same counsel, in his brief, there's a standing order from the IJ saying file your updated application, update your biometrics. He didn't file evidence of having done any of that to the board. And he didn't say in his brief that he would. So why would the board remand that to the immigration judge when there's no evidence at all that anything would change? All he asked for was his day in court, but he blew that by blowing the deadline. And that's in the regulations. So even all of these Lozada arguments aside, there's no reason just on the standard of review for a motion to remand, to remand this case to the board to do anything with the ineffective assistance. It's essentially beside the point. And as you say, it's being handled by the board in a separate motion. How do you deal with, it seems like the decisions from our court that are most analogous here are Lowe and Correa Rivera, because those are both cases where the ineffective lawyer continued to represent the client all the way through. And there we did not insist on full compliance with Lozada. So why does this not fall within a reasonable interpretation of those two cases? Well, in Lowe, there was separate evidence there. There was an affidavit from the petitioners and I believe from the attorney as well. Which, and again, there's nothing here. That's why I say this isn't a case the petitioner said, called it substantial compliance. There's zero compliance here. There's nothing. This case is tamang. This is someone accusing somebody of misconduct without any evidence of it. And then saying- The lawyer acknowledging misconduct in a brief filed to the BIA and to this court. I mean, the lawyer, Mr. Ingram, I believe, was not unaware of the Lozada requirements. In the BIA brief, he explained at length why he believed he had complied with a matter of Lozada. And so, it seems like we're compounding the ineffective assistance by making it even worse for this petitioner. Petitioner's counsel compounded the ineffective assistance himself by doing nothing that he needed to do in order to prove up his claim. And then claiming to the board that his misconduct was so obvious that he didn't need to suffer any consequence for it. There is a perverse incentive here, Your Honor. That's part of the reason why we are fighting this. Is there's a broader institutional concern about incentivizing behavior by this. By essentially saying, look, if you're gonna be a bad lawyer, just go big and do the worst job possible, because then you won't suffer any potential consequences for it. That's terrible. And I know it looks bad for this petitioner, but I'll remind you again, Your Honor, that we have not heard from this gentleman ever. And he's had plenty of opportunities to say something. We do not know what role he played. I know this looks sympathetic. I know this is a harsh consequence. But it's all, all of these regulations have been upheld for years. This is a proper outcome. I'm well over time, I apologize. But thank you very much, Your Honors. Great, thank you. Mr. Kang, you have one minute. Thank you, Your Honor. The government keeps trying to question petitioner's role in this case and saying how, oh, maybe petitioner himself missed a deadline. However, that's extremely unlikely because this case deals with an affirmative application of asylum. This is not a case where the petitioner was placed into removal proceedings and was trying to do everything he can to delay the proceedings. He affirmatively applied for this protection, so it's unlikely that he would self-sabotage his own case. And also, once the case is struck by the IJ, he no longer has any opportunity to remedy this situation. He no longer has any hearings to file the items that the IJ requested. Also, separately, there is evidence in the record that the ineffective assistance of counsel was plain because the BIA said as much, plainly, in its decision. So for these reasons, we ask that this court grant the petition. Great, thank you and thank you for the excellent argument. The case has been submitted.
judges: LEE, BRESS, Fitzwater